First case for honors this morning, proceeding with 11-0584, James P. Newman. I would like to call for his responsibility at first, if at all, as evidence. Are you for the charge, Mr. James P. Newman? Are you for the evidence, Mr. Robert Hill? All right, counsel, thank you, and everyone who's here, thank you. I was the culprit this morning. Actually, it was unadvertised pothole etching that was the real culprit. And four miles an hour for 20 minutes. But I'm not anxious. All right. And, again, thank you. All right, Mr. Newman, are you ready? I am. All right, you may proceed. May it please the Court. My name is James Newman. I'm counsel for the appellant plaintiff, and I'm also the plaintiff himself, so I'm appearing basically pro se. The issue before this Court really is whether or not the circuit court below properly granted the defendant's 2619 motion to dismiss. The underlying complaint sought three bases for relief. The first was to reinstate the corporation, HOA. The second was to have an election for the corporate HOA. And the third was the turnover of the assets after the election. The judge granted the first two portions of the relief. In other words, he reinstated the corporation. He also allowed for lack thereof an election by appointment. But he granted the defendant's motion to dismiss as it relates to the turnover of assets based in part upon what occurred in another matter in the 10L51 case. And I'll get into that in a moment. But first, the standard of review in this case is de novo. Counsel for the defendant had suggested that the standard is abuse of discretion, but it's not, simply because this case, while he filed this under 26193, while the case was pending, which counsel admits in his brief, the underlying case settled. So in order for a 26193 motion, there has to be a current pending case. You said current pending case. What authority do you have to support that, that there has to be a current pending case? When he filed this motion to dismiss, that case was pending, correct? Yes. And so it was duplicative of your case. Well, he's making that argument that it was not duplicative. But under the rule 26193, the rule itself, my authority is the rule itself, the action has to be pending. When the case was filed, there was an action. There wasn't an action pending. The 10L51 case was actually before the appellate court, before this court. After the motion was filed, that case settled. Okay, but the question is pending when. And the rule doesn't tell us pending when, does it? Well, the rule says, the rule does say there's an action pending, which means that it's existing. But when you look at what the standard is, because if the case law that he cites regarding 26193 in the standard of review, and why there is the only exception for de novo review, because the standard of review under 2619 generally is de novo. The only exception to that is under 26193. And the only exception, and the reason that there's an exception to that is because when that action is pending, the circuit court has to have discretion to look at that action and say, do I want to somehow merge the cases together? Is this going to create some kind of problem with the jurisdiction of the other courts? So when you look at why there is discretion and what the basis of that discretion is, it no longer exists when the action is no longer pending. Counsel, can we agree on some facts here? As you've indicated, when the second action was filed, the earlier case was pending before this court. At the time the trial court entered the order, the case here had been dismissed, is that correct? That's correct. Okay, so five days before the trial court granted the defendant's motion to dismiss, the earlier case was dismissed in the appellate court. Correct. So it wasn't pending when the order was entered, but it was pending when the action was filed. That is correct. And because it wasn't pending when Judge Mueller entered the order, then he could not – the standard that the court has to use to determine discretion, there has to be a pending case, because he has to compare this case to that pending case to determine whether or not there's a conflict and what's going to happen with two judges or two actions pending at the same time. Did the judge know that the case had been – the appeal had been dismissed? Yes, that's part of the record. As part of the reported proceedings, it was part of the argument that was made by the attorney, hey, this case is already settled. And it was dismissed because of a settlement, correct? Correct. It was dismissed – the 10-051 case was dismissed pursuant to a settlement. Now, does the trial judge here, Judge Mueller, have any obligation to review the settlement to see if there has been some resolution of the same issue? To see whether or not the settlement is valid? To see if – because we're talking about duplicative efforts and duplicative actions. Is there anything that would require him to look at the settlement for that purpose? Well, not under three, but I would think that he would have to do it to determine whether or not res judicato applies, obviously, which is the second argument they're making. Okay. And that settlement agreement has, as I point out in my brief, has absolutely – the 10-051 case, and especially the settlement agreement, has absolutely nothing to do with the issues raised in this case. Nothing. And, in fact, the 10-051 case that was in front of Judge Spence, nowhere in that case was it ever suggested by any brief or by a court or anybody that the commons, which is the subject corporation in this case, the derivative defendant, was somehow merged, turned over, or any of the issues that were raised in this case. But the underlying facts, the operative facts, had to do with the turnover, did it not? By the developers to the homeowners associations. So, in essence, the underlying facts of both of these cases were the same. No, they're not, because you have two separate corporations. The plaintiff in the 10-051 case was the Foxmill Master Homeowners Association. The derivative defendant in this case is the Foxmill Commons Homeowners Association. Foxmill is a development that has five separate and distinct homeowners associations that were created by the defendant. Well, now, the commons was involuntarily dissolved. Isn't that correct? And that was a few weeks after your complaint was filed. Isn't that right? It was. It became. I don't know if it was a few weeks after, but I didn't learn about it until a few weeks after because it wasn't posted on the site. I think it actually was dissolved beforehand. Now, does that render? Actually, I take that back. It was dissolved beforehand because it's part of my complaint, I believe. It's attached as an exhibit that it was dissolved. Well, my recollection of the record may be a little different, but be that as it may, didn't that render the allegations in the complaint moot? The allegations in what complaint? Your complaint. Absolutely not. In fact, I actually strengthened the complaint because that's why, in part, it was a derivative action. My case that was filed, I'll skip ahead to standing because he makes an argument of standing. Standing is found in two places. One, the covenants themselves provide that I, as a shareholder and a homeowner, have standing to file this lawsuit. It's specific in the covenants. And the second, from a derivative standpoint, as this panel, I'm sure, is aware, derivative jurisdiction or derivative standing is derived because the derivative defendant cannot or will not prosecute the case. Because the corporation in this case, the Fox Mill Commons Homeowners Association, did not have a board of directors at the time that I filed the suit, and then subsequently we learned around the same time that it was actually voluntarily dissolved, they could not prosecute the case, which gives me, as a shareholder, derivative standing. And that's why this action was brought. And that's exactly what the circuit court below found. And that portion of the order is not on appeal. In fact, the order from Judge Muir reads, and it's paragraph 5 of the order, says the current board of directors for the Master Homeowners Association has not filed the appropriate corporate documents for the Commons HOA and is not serving in that capacity. Counsel, let me ask you this. Was the issue of standing specifically raised and argued in oral arguments before the trial court? It seemed like the arguments got sort of shifted. The issue of standing was raised. Was it specifically raised? Not in this case. It was raised by brief. I think it was raised in the brief. It is, but I didn't see it argued in the lower court. Not at all. It was never argued in the lower court. The lower court, Judge Muir found that the 10L51 case had some type of effect on the case pending before him. And the position that we've taken is it does not because nothing was raised in the 10L51 case. A couple of reasons. The 10L51 case was dismissed for lack of standing. And that does not have, as I've cited the authority on here, and it's undisputed. That's the basis for the dismissal. Now, a lack of standing does not have any collateral assault effect on any case because it's jurisdictional in nature. So when a court, when a party lacks standing, the court doesn't have jurisdiction in part. And that's what the case law says. All right, but the problem that I'm having is if the case 10L51 on appeal had been dismissed and there was a settlement and he still found that there was some relationship between this litigation and that litigation, did he have the settlement to look at? He didn't. He was never presented to my net. Well, it's not part of the record, and I don't believe he was presented the settlement to look at. The settlement occurred right around, right before the argument was made. And the other judge, Judge Spence, had always had 10L, the 10L case. Judge Mueller had never had that case. No, that's correct. All right, so. Judge Spence was the sole judge on 10L51, which was dismissed for lack of standing, motion to reconsider filed, then came before this appellate court, then while I'm pending in the appellate court, the case settled. And the appeal was dismissed. And the only issue in the 10L51 case, which was argued and which Judge Spence ruled upon, was whether or not the master HLA had standing to file a lawsuit without a vote of the community. That particular issue has nothing to do with the issue before this court. And so any facts that Judge Mueller would have had about that litigation or about the settlement would have had to come in argument or some affidavits in this case? There was no affidavit presented. Yes, that's correct. It would have come in by the pleadings themselves, by looking at the pleadings themselves. But at the time it was filed, the pleadings, at the time the pleadings were filed, 10L51 was still pending. 10L51 was pending in the appellate court at the time, yes. But the settlement documents and the settlement document itself was never reviewed. But the settlement document, I don't believe it's part of the record. And I'm sure counsel can correct me if I'm wrong, but I don't believe it is. The settlement between the master HOA and the defense in this case provides nothing for the commons. It doesn't even mention the commons in there. It's between those two parties. The commons isn't a part of the settlement agreement, which is another. They didn't sign off on it or anything. And that's important, too, because the commons right now, this is why we go back to the June 15th order. Judge Mueller on June 15th reinstated or permitted the commons to be reinstated. They were reinstated the next day. Everything was sent in to the secretary of state. They were reinstated. A board of directors was appointed pursuant to the court order. The president of the commons HOA is not the same as the president for the master HOA. The board of directors, there's three boards of directors for the commons. None of them share any similarity with the board of directors for the master HOA. You've got different governing documents, different by-laws, different covenants, and they're completely different corporations. So they're different people. They're not only different people, but they're different corporations. And it's very important, these different corporations were created by the defendant. They've always been different. There was a unified board, though, wasn't there, counsel? There was never a unified board. We'll get to that in a second, and I can tell you why. Well, but in connection with that, did you make a demand on the master to file suit before you filed your complaint and ask the master then to go ahead and file suit against the defendants for the relief you were requesting, especially, let's say, the turnover of the assets? Are you talking about in this action? Yes. I would never have asked the master because the master would have no standing or authority to do so. And at the time that the – Well, you were a member of the master, correct? All Foxkill subdivision owners were members, correct? Honestly, Judge, no. And I'll tell you, that action – let me explain my answer there. When this case was pending, when this case was pending and the documents were finally turned over, because the corporate documents for the master HOA were not turned over until after Judge Pence ruled on the motion to dismiss, and that's supported by the affidavit for the corporate counsel. I did not serve as corporate counsel for the master HOA. There was another attorney that did that. When those documents were turned over and there was a full review of those documents and comparing the documents with the covenants filed, it turns out that the master homeowners association covenants were never filed on the lots in Foxkill with the exception of lots 1 through 61. There are 600 – and, in fact, you can – that's demonstrated – that's demonstrated in one of the exhibits, in one of the exhibits in the complaint. If you look at the covenants for the master HOA, it says that they're only applicable to what's attached as Exhibit A, and Exhibit A is lots 1 through 61. There are 670-so lots in Foxkill. My lot happens to be 650 or so. So the master covenants were never filed on my property. Instead, only the commons – that – so to answer that complaint, I have filed a separate complaint that's currently pending in the circuit court of Cook County to clear my title because the master covenants were never filed on my property. So I'm not bound by anything that the master association does. The commons, however, was filed on my property as the complaint alleges. It's the only covenants filed on my property. And, by the way, there are two separate covenants, two separate documents, two separate corporations. Now, they can – so the idea – when the complaint – when the original 10L51 complaint was filed, it was assumed that the master covenants were filed on all the property because that's what was told by us by the defendants. But when we compare the documents, once we got them all and realized that that wasn't the case, that – hopefully that answers your question. They were not filed. And that's part of the problem in this case and what it boils down to. This case is about whether or not the master – whether or not there is a – you said a unified board of directors and specifically the second amended bylaws. What the defendant has not answered in his complaint, what he has not answered in his brief, what he did not answer before Judge Spence is a simple question, which is the question that this panel needs to ask him, and I'm asking him this now. Were the second amended bylaws ever adopted in accordance with the covenants? And I'm talking about just for the master association because the master association requires notice to the community and it requires a vote of the board of directors. Neither one of those took place for those second amended bylaws. It's something that he completely glosses over, but he provided the second amended bylaws to corporate counsel saying that these are the applicable bylaws. And that corporate counsel filed those in another case. Well, then did you consult the members? Did you get permission from the members of the commons before you filed this suit? Before I filed my suit? Yes. I don't need to because I am a member of the commons and I'll read to you – So you didn't have to do that in order to have standing, so to speak, under the commons covenants. I do not because the commons covenants provide, and this is Article 11, which is part of the record attached to the complaint. The covenants and restrictions contained in these documents may be enforced by the developer, the association, and any owner in any judicial proceeding. So, but you filed not only on behalf of yourself but derivatively, correct? I filed derivatively because – So you could – anyone can do that? They can just walk into court and file on behalf of the commons without consulting anybody else in the commons? Is that how you interpret that? I interpret that, but I have personal – You could file on behalf of yourself individually, but that's not how you filed, correct? Yes, it is. I filed on myself individually and derivatively. And I filed derivatively because there was no association at the time I filed. In order for me to have derivative – in order for me to file derivatively, I have to demonstrate, which the complaint does, and of course not only does the complaint demonstrate it, but the relief given by the judge also demonstrates that. There was no corporation. So the reason it was filed derivatively is because the corporation could not file a cause of action. They could not take a vote. They could not do any of that because they did not exist, and there was no board of directors to do that. Me as an individual homeowner, I would have no capacity to call a vote or do anything necessary to get the community together. And my rights as a homeowner are certainly – and a shareholder – are certainly not dependent upon other members of the commons. The injury that I suffered was that I had these covenants, the only covenants, recorded on my property, and yet there's nobody to enforce them. And if I want to sell my house and a buyer says, I need a copy of the budget or I need this or I need that, you go to the association. I could not sell my house because we didn't have a board of directors. If my neighbor painted their house blue, I couldn't complain to somebody. The covenants don't allow you to paint the house blue because there was no board of directors. Most importantly, I wasn't given the right to vote. And all of those issues are things that give me standing. All right, counsel, will you wrap up? And you'll have time for rebuttal if you choose. Yes. The issue before this court is whether or not the 10L51 case had anything to do with the case that's brought here. In other words, the 10L51 case was a claim for damages and fraud in breach of fiduciary duty. This case is a turnover of a different corporation seeking a declaration and equitable relief. The parties are not the same. The relief is not the same. Nothing is the same except for the defendant, one of the defendants. And for that reason, there is no effect the 10L51 case should have on this pending action, and the circuit court erred in dismissing the complaint. Thank you. Thank you. I may please the court. Good morning, Your Honors. My name is Robert Villa. I'm here on behalf of Foxmill Master or the Foxmill Limited Partnership and B&B Enterprises. Before I begin my argument, I'd like to address two points that Mr. Newman made and one of the questions that Your Honor asked. First, I think it's important for us to understand exactly what was alleged in the case, what this verified complaint actually brought. This was not about an esoteric, I would like to have an election somewhere, please let me have one, that Mr. Newman is suggesting he asked for. It's not what he asked for. If you look at the verified complaint, the only relief that is asked for is to demand the immediate turnover of a corporation that had previously been turned over, the issues of which were contained in 10L51, against my clients, force them to pay damages to him or the commons, whoever would receive the money, for failing to allow him to vote, and then assign to them damages for attorney's fees and everything else. That's in the first action? That's in the verified complaint that Mr. Newman brought. In connection with the first action or this one? In connection with this action. That was the allegation that he, in fact, brought in this case. That was what he was seeking. So what he was seeking was remedy against my clients for past acts, that is, acts that would have had to have occurred prior to 2008, when they turned the matter over. And if you can look at what we filed in this case as our motion to dismiss, you'll see that attached to that is the actual full 10L51 case. And although that case brought allegations of breach of fiduciary duty and other sorts of tortious kinds of claims and statutory claims, it made very clear it was brought on behalf of every single homeowner. It was brought with the assignments of every single claim and right that all the sub-associations could bring. Mr. Newman, let's not forget, was not only the board member, he was the attorney for the HOA, along with other individuals, Mr. Fiala, who's also an affidavit in this case now, who decided to bring all of these collectively in a $69,689,666.10 collective lawsuit for the entirety of whatever happened in Fox Mill from the date of initial inception to the date it was turned over. So one of those things that is alleged in the complaint, and it's right on the front of the 10L51 case, you don't need to delve very far into the allegations Mr. Newman makes in prior cases. You have to walk around them in later cases because he likes to avoid them. In this particular case, we pointed out to the court these claims about whether there was an election for a unified board and whether a unified board governs Fox Mill was squarely at issue before Judge Spence. But it wasn't determined. Absolutely it was determined. There is no way for Judge Spence to have found that the covenants precluded the Master Homeowners Association, with all the assignments from all the sub-associations, to have filed suit without permission of the homeowners, without finding that the covenants had to be read uniformly and that the unified board of directors served in that capacity. In fact, the complaint itself says there's only one board of directors. Mr. Newman's complaint, the 10L51 case at paragraph 48 in the record, says just that. That when it was turned over on July 31st, 2008, Fox Mill Limited Partnership turned over control of Fox Mill HOA. Counsel, while you're on that subject, let me interject a question because your opponent has thrown down the gauntlet, so to speak. He says, asked opposing counsel whether the Second Amendment bylaws were ever validly adopted. Absolutely they were. And I can tell you, if this court seeks to have that addressed, you will be doing a review of another case in which affidavits, several affidavits, Mr. Newman's affidavit, another attorney's affidavit, and I know you don't have the full record in front of you, but if you look at what was attached to our motion to dismiss in this case, you will see that ad nauseam there was an analysis by Judge Spence as to whether those bylaws were valid and applied, and he said yes they did. Well, to whom? One through 60 or one through 660? Well, that was the entirety of the Fox Mill community in that case. They govern everyone. And those facts that Mr. Newman is bringing in this case, he has no sort of remedy here other than asking for an election for the commons. And what we pointed out to Judge Mueller was that issue of whether there's a unified board was before this court. That's how we prevailed before Judge Spence, was convincing the court based on the evidence that was presented, sworn affidavits of Mr. Newman himself, evidence of prior activity of the board in other cases when it was attached, the Second Amendment bylaws were attached, to sue my clients to turn over property. All of those actions, including the affidavits of Mr. Griffin and other members of the community, were addressed by Judge Spence, and he ruled specifically that he finds them to be an established fact. And then that case goes up on appeal. And then that case goes up on appeal. And what happens at that time is Mr. Newman then is terminated in September of 2010. We provided evidence in the record of the HOA's decisions on why they terminated him. Mr. Fornek became the attorney for the HOA, and he continued with what he had left. He had to continue with the appeal and file the appeal based on the arguments and the motions for reconsideration that Mr. Newman had filed. While that case was on appeal, there was squarely the issue of whether we had properly prevailed on a motion to dismiss, saying that they could not grant a claim until they, any claims that they had in the case, until they obtained a vote. And here's where it becomes important, and to address your question about standing. Yes, in this case below, in front of Judge Mueller, standing was directly placed at issue by us. Before we get into that, there's a very fundamental question we're not answering specifically yet. Obviously, 216.2-619 provides for an involuntary dismissal when there's another action pending. Correct. But the same party is the cause of action. We can agree on that. Correct. Obviously, at the time the second lawsuit was filed on Mr. Newman, that action was pending before this court. That's correct. However, at the time the order of dismissal under that was granted in your favor, that case had been dismissed five days earlier. Five days earlier, that's correct. So how do you respond to the argument that technically when the order was entered, nothing was pending in the appellate court at that time? Two ways. First, I recognize that our brief probably should have had a reference to, if this court finds that Judge Mueller's decision under 2619 properly fit under 2619-4, which would have been a prior-dismissed action, which is where race judicata and collateral estoppel, I think, properly fit, or even 2-619, then de novo would be the appropriate review. If, as we maintain, you analyze this case, or the motion at that time, against the complaint from the time the complaint was filed, then it's 2619-3. It's either one. I was asking the same thing. I'll be honest with you, Your Honor. When we look at the 2619-3 cases, I did not find a case that said one way or the other. But under either standard of review, our case prevails because on that day, June 15th, when we argued before Judge Mueller, we identified for him, and it is in the record. There are at least three sections in the argument on June 15th in which I advised the court that there was a final judgment now when this case gets reversed. Or not reversed, but the appeal is dismissed. An appellant has an absolute right to dismiss an appeal. And when they do that, the parties are put back into the place they were before the appeal was filed. In fact, that's my exact language in the June 15th transcript. That meant that at that time, all claims that were brought or could have been brought, for example, allegations that the bylaws which were turned over in 2005 were somehow inappropriate and my clients, which is what is asked for in this case, have to pay damages or somehow injured Mr. Newman or the commons itself. All of those claims are barred by res judicata, whether they were included specifically as claims or whether they could have been brought. And because there are allegations not only on the face of the first page of the 10L51 case that has the names of the commons and the homeowners associations, Hamlet, Settlement, Farmstead, it specifically included assignments of causes of action. Those assignments were procured by the then existing board of the common unified board of directors. Exhibit I to our complaint is a copy of the Secretary of State's filings in 2009 which shows Mr. Newman was on the board in 2009 of the commons. He was also on the board of everything else because it was a unified board of directors. That's how it had been turned over. But now it's argued that those assignments really weren't valid because they were procured by fraud. To the extent it is argued here, it is barred. It was already brought and argued that it was those exact phrases, Your Honor, were brought in 10L51 before Judge Spence and decided adversely to Mr. Newman and the association. Adversely to him, and now they are forever forgiven. Mr. Newman was not a party to that first action. He was a party. He was both a party and he was a party by privity. That claim on its face was brought by and on behalf of every single person that lives in Fox Mill, every single homeowner. It's on the very first page of the complaint. And it says it is also describing the sub-associations in the complaint. It also says that those sub-associations' rights were brought by way of assignment. This is a derivative case. There is no individual claim that he has available against my clients such as he was denied a right to vote. That's a claim about a past action for work with respect to the Second Amendment bylaws that were turned over back in 2008. That was clearly included as an allegation of conduct. It says it right here in the complaint. They were responsible for drafting and developing all the covenants and bylaws. Mr. Newman was in privity with himself as the attorney by bringing this case both as a board member, as an attorney in the community, and as a homeowner in the community. That he did not see what the ramifications would be under Rule 273 of the Supreme Court rules, under res judicata, under collateral attack, when he failed to do what might have easily been done. Once we filed our motion to dismiss and said he did not come here with permission, he had several options to preserve the claims for other associations. He could have dismissed it, asked to voluntarily leave to amend the complaint. He could have sought to voluntarily dismiss the complaint or leave to replea. He could have done all those things. Removed common associations, removed the assignments. He did nothing. He did what he's doing here. He argues I have a right, they're wrong, I'm going to have it litigated. He did so to his peril and the peril of everyone else because Rule 273 and res judicata, as many cases from this court, the Supreme Court, and its own rulemaking body have decided, are final. I want to make sure we're clear on the standing issue because this is an issue that Mr. Newman has confused for good reason. We raised a 26192 motion before the court, 26193 and 2. It is clear that we relied on the Goldberg case that says Mr. Newman has no business as a homeowner, and as Your Honor questioned him on, coming in and challenging the decisions of the board by suing a third party, which is what he did in this case. He sued a third party, us, my clients. He doesn't have the authority to do that. That's where the Goldberg case stands. That was our standing issue. That's a different type of standing than what Mr. Newman interjected into his reply brief. You note that his opening brief doesn't discuss standing in the context of anything other than he has an individual right as a homeowner. What he raised in his reply brief, and I think the court might be questioning on this, a notion that there's some type of jurisdictional standing that was raised or addressed and somehow occurred in the 10051 decision that prevents race judicata from applying. That's simply not the case. Jurisdictional standing of the type that Mr. Newman is seeking to raise, which was in the Italia Foods case that this court decided, which was also in, I think it's called, people, I think that might be the case. That refers to whether or not someone is the proper party to ever bring a claim. Are you ever going to be the plaintiff who can come into this courtroom and bring a claim? And that's why those cases talk about that being jurisdictional and necessary to maintain throughout the course of a case. So this 6192 motion was brought before Judge Mueller. Yes, it was. Did he decide that motion? He did not make a specific finding in his ruling under which section of the code he was dismissing this case, whether he said 3 was proper, whether it was 2, or whether he decided after we pointed out now that the case had been final in 10051 that there were no more claims left that he decided 4 or 9 would apply. But that's not it. There's no restriction on this court to review his decision. In fact, I think the cases make it clear that you needn't be concerned what section of the code he decided under if you find 261. That it was the correct decision. The correct decision, that's right. Did you orally argue standing in front of him? Which type of standing? The standing to bring a claim? Yes, and it is also in our brief. We did mention that he didn't have a right to bring those claims. What happens on June 15th is 5 days before the appellant dismisses this case, or the 10051 case. And that changes some of the argument because it makes now final. No longer is it available for anyone to now bring claims against my clients, which is what this is about. This is not a lawsuit against the Master Association by Mr. Newman saying I'd like to have an election. This is a lawsuit against third parties for damages alleging that they fooled him, prevented him from voting, and owe him money. That's what this case, the claims on the face of the verified complaint, asked for. And that's the context by which we filed our motion. And said when you're coming against our clients, they're already at issue on this point in 10051. And if you're seeking damages, you can't do that anymore. But now Judge Mueller, on the motion for reconsideration, didn't of course address any of that. What he did was grant some sort of equitable relief, right? I mean, did he do that just out of thin air to allow several directors to be appointed to reinstate the Congress, correct? So where did this equitable type relief come from if that's not what was prayed for in that complaint? I can tell you, Your Honor, that is exactly why we filed our motion. And I'm standing here before you with the same decorum that I tried to present to Judge Mueller. That was – I have no idea how and why he did that. I mean, there was no relief. Look at the complaint. There was absolutely no relief whatsoever asked for against the commons. None. It was a nominal defendant. Mr. Newman simply said, oh, they're not here. Default them. And now let me appoint boards of directors because the current board has failed to administratively keep these people in good standing. Wasn't there a request to turn over something to the commons? And there had to be a commons in order to have it turned over to the commons? You mean to have the portions of the association turned over? Yes. In the complaint? Yes. But from our third party he asked that to happen. But that's not what he wanted. He wants an election. I know. But you can't have anything, election assets, anything, until you have a commons. We do have the commons. And we do have a unified board of directors. And I can tell you that the parties here are – Even though it was dissolved by the Secretary of State. That's correct. And I can tell you why. If you were to look at a document that's filed in this case, it's fortunately in the record, the Master Holder Association, by its unified board of directors, meaning unifying the governance of all the communities, filed a very instructive petition to intervene in this case. It's contained in the record that I think it's – And that was denied. No, it was withdrawn as moved because once the court decided that the case was dismissed, there was nothing to intervene in, is what the point was. And when the court reviewed our order, our request, he simply said, right, all I intended for Mr. Newman and Mr. Fiala, who is then appointed president, to do was to reinstate the corporation. That's it. There are remedies of board of directors. It's replete throughout all the discussion that he found there. And I pointed out to the court, this is Mr. Newman trying to be clever. Within the same proceeding, you see, we argued effectively that you could not find against our client that they had not done this because it was already decided in 10-051, and he went ahead and did it anyway against a nominal defendant that had no claims against it in the case. He just announced it and got their leave. Would you summarize your argument, please? I think that Judge Mueller, whether specified or not in the opinion, made it very clear that the case against Foxwill Limited Partnership and B&B Enterprises was properly dismissed, and there are several reasons. First, at the time it was filed, there was no question the issues were pending in the 10-051 case. On the very first page of our appellate brief, we point out citations in the record when Mr. Newman himself says, Your Honor, I was the attorney for it. Are we the exact same thing I'm arguing now? There is no unified board of directors. He told that to Judge Mueller. It's at the record at page 17. But, Judge, what I'm saying is I want to make it very clear. The master, which is the party, made the same argument that they're not the unified board of directors for the commons, and there was no unified board of directors. It could not have been clearer by his own admissions that that issue was on appeal. You can make similar arguments, but the issue might be different, and that's what we look at. It's not what was argued to get to the issue. What was the issue? In 10-051? Yes. Whether there was a unified board of directors, and as a result, were they barred or precluded from bringing this case because they had failed to follow the initial requirements for doing so. And that's the equivalent of saying, and what we did there, I want to be clear, is the equivalent of saying we're asking to dismiss your case because of 2-615. There are five elements to a fiduciary claim or whatever, and you only allege three. If you challenge that issue, and there are maybe 10 other claims, if you challenge that issue and decide to go up on appeal and that matter becomes final, Rule 273 would raise you to cut, bar forever, all of your claims that were otherwise brought because there was a determination on the merits. And that's what we advised Judge Mueller in that day. Not only was it pending, remember, when we asked him initially to dismiss it, it was to be discretionary because the issues were already presented to Judge Spence and up on appeal. Now, I'll leave you with this. If the appeal had proceeded and had been reversed, this Court would have apparently found that there was not a unified board of directors. That's the only thing that would have come back because that was what was at issue. The appellate briefs and the arguments which we attached made it clear. It was in the headings. There was legal arguments and everything else. So, title is pending. There's no question. The same claims, issues were on appeal, factually and otherwise. It would have been a clear collateral attack to try to do it again in another case. Number two, once that appeal was dismissed, whether it seems harsh or not, it is as intended by the Supreme Court to prevent multiple litigation, claim splitting, and everything else. By rule 273 and by case, automatically bars all of those claims that were brought or could have been brought. And that occurred five days before judge knew what rule. And third, the allegations that Mr. Newman is bringing here are not about asking for an election. That might be a completely different case, and he can sue with the other six cases that this case is going to be consolidated with, should it go back, again, the association, to ask for some type of relief. This is a third-party action. And that is why it is barred. Thank you. Thank you. Justice Hudson, you asked the attorney a very simple question, which I asked you to ask, which was were the Second Amendment bylaws ever adopted? Counsel responded to you, yes. Now, while he's not under oath, he just lied to you. And I'll tell you why. Because he answered yes, but then he went on and said, we got to look at the other documents and we proved this and we proved that. Well, let me read to you the ruling from Judge Spence when he went, this is how he thinks they were adopted. And this is in the record. And this is, I'm quoting Judge Spence when he ruled and granted their motion. My reading of this is that both the plaintiff and the defendant, for starters, have both admitted in previous litigation that the Second Amendment bylaws are in existence. Okay? The 10R168 case, which is really the 09MR68 case, that the Second Amendment bylaws were certainly attached to and made part of that complaint there. I saw it also admitted in the answer. I think that that is an established fact. That is how he thinks that the Second Amendment bylaws were, in fact, adopted. The problem is that the Second Amendment bylaws, in order for the Second Amendment bylaws to be adopted, in other words, in order for them to be legal, because that's really what the question here is, were the Second Amendment bylaws ever adopted and, therefore, were they legal? In order for that to happen, the bylaws that he cites require that these bylaws may be altered, amended, or repealed, and new bylaws may be adopted by two-thirds of the directors present at any regular meeting or at any special meeting, provided that at least two days' written notice is given of the intention to alter, amend, repeal, or adopt the bylaws. What's missing from the record? What didn't he answer? Counsel, just look this way. There's never been notice to the community. There's never been a vote of the board of directors. There are no minutes establishing that these bylaws were ever adopted. Instead, what Judge Spence found, which is part of the problem, is that they were admitted in this other case, and that admission is based upon his client's fraud, which is established by affidavit and uncontroverted. He doesn't even address it because he can't. He can't address the fraud that his client committed to the HOA in giving these fake bylaws, which were attached in an unverified complaint. And that's, in essence, what he claims they were admitted. Now, the other thing, this particular complaint, the complaint that's before Your Honor, before this court, he claims I'm seeking monetary relief. That's not true at all. I mean, the document speaks for itself. I'm going to read it to you. This is the complaint, the prayer for relief, which is A, to require the defendant to turn over control of the commons immediately. B, for the court to supervise an election for the board of directors for the commons. C, to require the defendant to turn over all the assets of the common. And D, cost and attorney's fees of this lawsuit, which are provided by statute. Nowhere in this complaint is there a seeking for monetary damages. Is there any seeking of monetary damages? The court granted the relief that I sought. In other words, reinstated the commons. And rather than have an election, the judge said, well, you know what, I'm not going to have to go through an election. I'm just going to allow you to appoint three members in order to have an election. Because in order to have an election, you've got to send out notice to the community and everything. The court didn't want to do that. So they said, I'll appoint them, which is what I did. Which brings us to the other problem that was created in this case. After that order was entered, they noticed an appeal was filed. On the 30th day, counsel files what he calls a motion to reconsider. But it wasn't a motion to reconsider at all. In fact, he didn't ask the court to reconsider the granting of his dismissal. What he did is said, I'm a little confused by what you did here, and I want you to clarify the rule, to clarify your order. And that's exactly, if you read the order that was entered by the judge, Judge Mueller in the case, he specifically says that he's clarifying the ruling. Well, guess what? A motion to clarify is not a post-trial motion which would give the court jurisdiction after a notice of appeal was filed. So the trial court had no jurisdiction to enter that second order because there was no post-trial motion entered. And for another very obvious reason, what the court did, in effect, was enter a temporary restraining order against the corporation, the Foxmo Commons, which was not given notice. And they were in existence at that point. In fact, the whole motion was, hey, the Commons has been created, and now they've asked for assistance in having an election, and we don't want that. No notice was given to the Commons, and yet there was an injunction entered by the court. Now, if you look at the record, what the judge said in clarifying this was, I'm going to enter this injunction and not allow them to do anything until the appeal gets decided because counsel has suggested he's going to file an appeal. He never did. How do you briefly respond to the res judicata argument, counsel? Well, the res judicata argument, as I responded to my brief, there is no similarities in the causes of action. And there's one case that I found in Illinois that deals with an argument that he made that's in my favor, and that has to do with privity and whether or not, as an attorney, is there any privity with a client. And that case, which isn't cited in the brief, is Morris B. Chapman & Associates v. Kitzman, 307-IL-AB-3-92, and it's a 5th District case out of 1999. And it says that for purposes of res judicata, an attorney has no privity with his client, which makes sense. But you had a dual role in that other lawsuit, correct?  I'm not a member of the master. And let me make one thing very, very clear here, which, again, can clarify things here. Whether or not the second amended bylaws exist, which, again, they don't because they've never been adopted, and he didn't answer the question, but they don't. But even if they did, if the second amended bylaws for the master association says that there's a unified board of directors, there's two problems with that. One, the commons bylaws, which are attached to the complaint and have to be deemed as true because he can't, in a 2619 motion, say those bylaws don't apply. And he doesn't even suggest that. The commons bylaws do not merge the corporations, do not have a unified board of directors. So, in essence, what he's saying is that the master bylaws say there's a unified board of directors. That's only part of the equation. The commons would have to say, oh, yes, we're unified with the master. The fact that the master wants to unify with the commons is irrelevant unless both do it. They are not a member of the master because the master is not properly constituted. The master hasn't been recorded on my property. I'm not a member of the master. I, myself, am not a member of the master. But a board member. What do you mean a board member? Were you on a board? I was on the board of the master association. Remember what I said. The documents, the idea about whether the masters were recorded and all of those documents, those weren't turned over until after the litigation was terminated. And that's supported by affidavit 2. But I want to go back, if I can, real briefly. The commons, the issue here is whether or not the commons bylaws have anything to do with combining them. But, more importantly, let's just assume they did. And I'm going to leave you with this. Because this is an outcome-determinative argument that I'm going to make here. Even if there was a unified board of directors, as he claims, so what? A unified board of directors doesn't mean anything. It just means that you have the same five people serving on this board as they do on this board. It doesn't merge the corporations. As I point out in my brief, in order to merge the corporations, which nobody has suggested, you have to follow the nonprofit corporation. It has very specific requirements. Notice to the community, vote to the community or the shareholders in order to do that. That's not been done here. It's not been suggested. So the fact that even if you had a common board of directors, and how do we know we don't have a common board of directors? Because Judge Mueller, in this case, said that we do not have a common board of directors because he allowed the board of directors to be created. And the president is sitting right there, Mr. Ed Fiala. He is not the president of the master. We do not have a unified board of directors. That's an established fact, and as a matter of law, we don't. And it's not up on appeal here. So to argue that there's a unified board of directors ignores the ruling. I go back to what's the relief I'm seeking here? And I'm done here. Judge Mueller has granted the relief, has allowed the corporation to be reinstated. We have a board of directors. But he has this, for lack of a better term, injunction in that last order, which was invalid on its face. I want that vacated. The August 17th order? Yes. I think it's August 17th. I'd like that order vacated because the court didn't have jurisdiction to enter it in the first place, not only because it wasn't a post-trial motion, but because there was no notice given to the corporation. And then finally, the issue, which is a question of fact, is he claims there was a turnover of the assets. Because that's all that's left. We can have the election, but the assets of the corporation, the assets of the commons, need to be turned over. And if he claims that they've already been turned over, well, then that's going to be real simple for him in front of a trial judge to evade the evidence and go, yes, you turned over the assets, and those were the assets, and you turned them over. That's a question of fact. Those assets have never been turned over. And that's what's alleged in the complaint. And we have to remember that this is a 2619 motion. So the allegations in the complaint are deemed, admitted, or true, the well-planned allegations. And a 2619 motion cannot contradict the factual allegations, and nor can it defeat the claim substantively. And that's exactly what he's tried to do here. He's made all types of factual arguments, but they're questions of fact. The only thing left is whether or not there was a proper turnover of assets. And I'd ask the court to reverse the remand to the circuit court to make that determination and to basically vacate the August 17th order so that the HOA, the Commons HOA, can function as a proper corporation. Counsel, one in brief. I'm sorry. What do you allege were these assets that weren't turned over? Well, the assets of the corporation would be, well, and it's also the records. I should say the assets and the records. The assets and the records. The assets would be whatever money is left in a bank account, real property, tangible property that would belong to the Commons. And in this case, there are several parks that are within the Commons. There are four communities. Those parks would go to the Commons under the covenants. The Commons covenants delineate the property, if you will. And also, you know, the assets would be the bank account. There was a bank account and there was a reserve bank account for the Commons. That has not been turned over to the Commons. And there's never been a board or director to accept that until now. Now there is. So, and again, that's a question of fact. All right, you've answered the question. Thank you. All right, thank you very much. Both counsels, thank you. The case will be taken under advisement. We will grant a decision in due course. We're going to stand in recess.